[No. 29447. Department Two. March 28, 1945.]

ROY E. PETERSON, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 157 P. (2d) 298.

The *Attorney General* and *Rudolph Naccarato, Assistant,* for appellant.

*Griffin & Gershon,* for respondent.

SIMPSON, J.—Respondent sustained an injury January 8, 1940, while employed in extrahazardous work. His claim was recognized by the department, and he was given medical care and time loss payments. November 9, 1942, subsequent to investigation, the supervisor of industrial insurance placed respondent upon the pension rolls for the reason that he was permanently totally disabled.

December 19, 1942, respondent appealed to the joint board with the request that he be adjudged permanently partially disabled. He based his appeal upon the following grounds:

"That the claimant was injured in the course of extrahazardous work in the employ of Wilkeson-Wingate Coal Co. on January 8, 1940; that he is now suffering from numerous disabilities in his back, internal abdominal organs, urinary system, head, and left ear, and that the said

disabilities are permanent; that prior to the said accident, he was in perfect physical condition, and was suffering from none of the disabilities herein set forth; that he is not totally and permanently disabled from engaging in any gainful occupation; that since October 1, 1942, he has been able to perform light work, and to carry on a gainful occupation in light work; that he has suffered a very severe permanent partial disability."

The appeal was allowed and a hearing had, at the conclusion of which the decision of the supervisor was sustained. Respondent then appealed to the superior court. The cause tried to a jury resulted in a verdict reversing the order of the department. So doing, the jury made answer to special interrogatory as follows:

"INTERROGATORY No. 1.

"Was the Department of Labor and Industries correct in adjudging plaintiff permanently totally disabled?

"ANSWER: No.

"If your answer to the above interrogatory is 'yes' you need not answer the following interrogatory. If your answer to the above interrogatory is 'no' then you will answer the following interrogatory:

"INTERROGATORY No. 2

"What amount of permanent partial disability compensation, if any, is the plaintiff entitled to?

"ANSWER: $7540.00."

On motion for a new trial, the court reduced the amount found by the jury to $4,940. Respondent agreed to the reduction, and judgment was rendered for the amount named by the court. The department has appealed.

The assignments of error are: In refusing to grant a motion made at the beginning of the trial and before evidence was introduced to take the case from the jury; in the giving of three instructions; and in the allowance of attorney's fees.

The record discloses these facts. Respondent was forty-six years of age at the time of the accident and was working at a coal mine where he had been employed for the preceding twelve years. He was injured at a time when he was unloading a coal car. The brakes failed to hold and the car ran onto respondent, forcing him on his back with

his feet and legs doubled back over his abdomen. He suffered injuries to his legs, abdomen, back, and ears. Respondent testified that he was able to do light work and he had been for some nineteen weeks employed as a coppersmith helper at the Seattle-Tacoma Ship Building Plant and had earned approximately fifty-four dollars per week. He said that he could not do work that required the lifting of heavy objects and that he had to rest frequently. He admitted that he suffered much pain in his head, back, legs, and in the abdominal region.

The evidence given by the doctors differed in its material aspects. Dr. E. R. Tiffin cared for respondent immediately after the injury, associated with Dr. Mullen on two occasions when respondent was operated upon, and thereafter gave considerable treatment to his patient. Dr. Tiffin was of the opinion that respondent suffered a permanent partial disability and rated that disability as follows: abdominal condition, eighty per cent; urinary difficulties, thirty-three and one-third per cent; disability to each leg, thirty-three and one-third per cent as compared to the amputated value of each leg; loss of hearing, twenty-five per cent; injury to back, twenty per cent unspecified disabilities. The doctor stated that respondent was able to do light work, but could not be on his feet continuously and was unable to lift heavy objects.

Drs. C. V. Lundvick and L. T. McNerthney examined respondent March 22, 1942, and then with Dr. Hunt made another examination on September 18, 1942. These examinations were made for the purpose of ascertaining the extent of respondent's injuries and to enable the doctors to testify as to the extent of those injuries. They were of the opinion that respondent should be rated as being permanently totally disabled. Drs. Lundvick and McNerthney, after the first examination, fixed respondent's disability at eighty per cent. However, at the time of the last examination they and Dr. Hunt concluded that respondent was permanently totally disabled.

██ The only question presented by appellant's first assignment of error is the right on the part of an employee

to question the allowance of compensation for permanent total disability. It is the contention of the department that permanent total disability is the highest award that can, under any circumstances, be given to one injured in extrahazardous employment, and for that reason no appeal would lie from the order of the joint board to the superior court. This argument is based upon the holding of this court in *Harrington v. Department of Labor & Industries,* 9 Wn. (2d) 1, 113 P. (2d) 518.

It is quite true that one cannot appeal unless he be aggrieved. *Paich v. Northern Pac. R. Co.,* 88 Wash. 163, 152 Pac. 719; *Hunner v. Mulcahy,* 45 Wash. 365, 88 Pac. 521. However, it is our conclusion that respondent was aggrieved.

Factually, respondent has suffered only a permanent partial disability. He is able to work—he has worked and is working. With a permanent partial disability award, he would be assured that, if he suffered further accidents, he will be paid for them according to the legal classification of his disabilities. If he accepts the permanent total disability award, he estops himself from receiving and the department from paying compensation for subsequent injuries.

A workman has a right to all the benefits of the workmen's compensation act, and he cannot be compelled to accept an erroneous classification of his disabilities because that classification gives him the greatest benefit which could be paid for a *single* accident. It is also true that, in the end, he might receive less compensation if he were to accept the department's classification of permanent total disability. In this connection, it must be borne in mind that the workmen's compensation act is industrial insurance and a workman is entitled to the insurance protection given by the act and, if that protection is denied him, he is an "aggrieved" person.

In the *Harrington* case, this court did refer to permanent total disability as the highest rating and the compensation allowable to that rating as the highest. However, that statement, while perfectly proper in the cited case, has no application here. In the former case, the workman had been

allowed and had accepted compensation for a permanent total disability and then attempted to recover for an injury occurring thereafter. In the words to which we have just referred, we simply held that the workman was, to all the intents and purposes of the industrial insurance act, non-existent and had received his last or final award provided by the act.

■ There was sufficient evidence to take the case to the jury. The members of that body listened to the reading of the evidence of the four doctors and decided that Dr. Tiffin's conclusion was the proper one and, in so doing, were entirely justified, because Dr. Tiffin had cared for respondent at and after the time of the accident, while the other doctors had only the benefit of an examination made long after the injury.

, ■ The conclusion reached by the joint board has little bearing upon this case, because its members did not hear the evidence given, but simply read the record prepared by two different examiners.

Before the passage of the present jury act, this court held that, in cases where the joint board did not hear the witnesses, the courts were equally able to weigh and determine the facts. The credit usually given triers of fact, be they board, court, or jury, depends upon the fact that they see and hear the witnesses and are thereby better able to weigh the evidence given and to consider the creditability of the various witnesses. *Cheney v. Department of Labor & Industries,* 175 Wash. 60, 26 P. (2d) 393; *Spier v. Department of Labor & Industries,* 176 Wash. 374, 29 P. (2d) 679; *Sweitzer v. Department of Labor & Industries,* 177 Wash. 28, 30 P. (2d) 980, 34 P. (2d) 350; *Peterson v. Department of Labor & Industries,* 178 Wash. 15, 33 P. (2d) 650; *McKinnie v. Department of Labor & Industries,* 179 Wash. 245, 37 P. (2d) 218; *Rikstad v. Department of Labor & Industries,* 180 Wash. 591, 41 P. (2d) 391; *Zankich v. Department of Labor & Industries,* 189 Wash. 25, 63 P. (2d) 427; *Matson v. Department of Labor & Industries,* 198 Wash. 507, 88 P. (2d) 825.

■ This rule bears with full force when industrial in-

surance cases are tried to a jury. In any event, the jury must determine whether or no the findings of the joint board are correct. The verdict of the jury, based as it was upon conflicting evidence, is conclusive and binding upon this court unless it can be held that there was some error committed during the trial.

Appellant contends further that, regardless of the holding that the claimant was an aggrieved party and regardless of the jury's verdict, respondent cannot receive more than twenty-four hundred dollars. This argument is founded upon our recent decision, *Yockey v. Department of Labor & Industries,* 21 Wn. (2d) 171, 150 P. (2d) 680, in which it was held that:

"In arriving at the ultimate number of degrees of disability suffered by a workman, the court or jury may take into consideration all the unspecified injuries the workman may have received as the result of an accident; however, in making the award, it must be limited to and based upon a maximum disability of eighty degrees and a maximum award of $2,400."

■■ We recognize and have no thought of departing from the decision to which we have just referred. However, the decision in that case cannot govern in the one at bar for the following reasons: First, the assignment of error now under consideration goes only so far as to raise the question as to whether respondent was an aggrieved party and it cannot be used to test the amount awarded by the court or jury; second, the instructions given by the court became the law of the case because of the failure of the state to make proper exceptions to them. *Yockey v. Department of Labor & Industries, supra; Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973.

■ The only exception made was: "If the court, please, the State of Washington takes exceptions to Instructions 1, 5 and 11." This exception did not comply with the provisions of Rule 10 of the Rules of Practice, hence cannot be considered. *Kelley v. Cohen,* 152 Wash. 1, 277 Pac. 74; *Davis*

*v. North Coast Transportation Co.,* 160 Wash. 576, 295 Pac. 921; *Nicholson v. Postal Telegraph Cable Co.,* 162 Wash. 603, 299 Pac. 397; *Nelson v. Owens,* 166 Wash. 647, 8 P. (2d) 301; *Gattavara v. General Ins. Co.,* 166 Wash. 691, 8 P. (2d) 421; *Helf v. Hansen & Keller Truck Co.,* 167 Wash. 206, 9 P. (2d) 110; *State v. Mooney,* 170 Wash. 260, 16 P. (2d) 455; *State v. Eckert,* 173 Wash. 93, 21 P. (2d) 1035; *Parton v. Barr,* 174 Wash. 314, 24 P. (2d) 1070; *Bown v. Tacoma,* 175 Wash. 414, 27 P. (2d) 711; *Kowalski v. Swanson,* 178 Wash. 231, 34 P. (2d) 454; *Wintermute v. Department of Labor & Industries,* 183 Wash. 169, 48 P. (2d) 627; *Boyd v. Cole,* 189 Wash. 81, 63 P. (2d) 931; *State v. Severns,* 13 Wn. (2d) 542, 125 P. (2d) 659; *Easton v. Chaffee,* 16 Wn. (2d) 183, 132 P. (2d) 1006.

Instruction No. 1 was general in that it explained to the jury the purpose for which they were called and the questions they were to decide. Instruction No. 5 submitted the case to the jury upon the theory advanced by respondent and told the jury that they might consider all of the claims made by respondent concerning his different injuries, which would total the amount of $7,540. Instruction No. 11 was a definition of permanent total disability as set out in our industrial insurance act. These and the other instructions given constituted, as we have already stated, the law of the case; and the department is bound by those instructions as effectively as though the contents were contained in acts passed by our legislature.

 The last assignment of error relates to fees allowed counsel for respondent in the sum of seven hundred fifty dollars. We conclude that the allowance was too large. The record read to the jury was but seventy-five pages in extent and the trial lasted but one day. In our opinion, three hundred fifty dollars is sufficient to be allowed respondent's attorney. This conclusion is borne out by our decision in the following cases: *Abraham v. Department of Labor & Industries,* 178 Wash. 160, 34 P. (2d) 457; *Wintermute v. Department of Labor & Industries,* 183 Wash. 169, 48 P. (2d) 627; *Dessen v. Department of Labor & Industries,* 190 Wash. 69, 66 P. (2d) 867.

The judgment of the trial court will be modified by reducing attorney's fees to three hundred fifty dollars. As modified, the judgment is affirmed.

BEALS, C. J., ROBINSON, and MALLERY, JJ., concur.
BLAKE, J., dissents.

